# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1522V
Filed: April 11, 2025

| | |
|---|---|
| ERIN M. KINNEY,<br><br>     Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner |

*Phyllis Widman, Widman Law Firm, LLC, Linwood, NJ, for petitioner.*
*Neil Bhargava, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

  On October 2, 2018, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.* (2012) ("Vaccine Act").[2] (ECF No. 1.) Initially, petitioner alleged that she suffered a seizure disorder, postural orthostatic tachycardia syndrome ("POTS"), and fibromyalgia following the administration of an influenza ("flu") vaccine on October 15, 2015, and a measles-mumps-rubella ("MMR") vaccine on October 21, 2015. (*Id.*) However, petitioner later amended her petition to allege that the flu and MMR vaccines caused her to suffer "a seizure disorder/epilepsy, periodic paralysis, syncope, exacerbation of migraines, [POTS], cataplexy, narcolepsy, fibromyalgia, focal postganglionic sudomotor impairment chronic fatigue, and severe anxiety and depression." (ECF No. 38.)

  A consented motion to substitute counsel was filed on June 3, 2022. (ECF No. 82.) In anticipation of her withdrawal from the case, petitioner's prior counsel, Carol L.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

Gallagher, moved for an award of interim attorneys' fees and costs.  (ECF No. 80.)  The undersigned awarded Ms. Gallagher interim attorneys' fees and costs totaling $122,343.84.  *Kinney v. Sec'y of Health & Human Servs.*, No. 18-1522V, 2022 WL 17968792 (Fed. Cl. Spec. Mstr. Dec. 7, 2022).  The change in counsel occurred just prior to the entitlement hearing held in this case.  Ultimately, on May 8, 2024, the undersigned issued a decision concluding that petitioner was not entitled to compensation for her injuries.  (ECF No. 123.)

Petitioner filed a motion for final attorneys' fees and costs on July 1, 2024.[3]  (ECF No. 128.)  Petitioner's counsel requests a total of $98,105.64 for attorneys' fees and costs, including $77,402.25 in attorneys' fees and $20,703.39 in costs.  (*Id.* at 2.)  Of those costs, $88.34 represents costs incurred by petitioner for production of medical records.  (*Id.*; ECF No. 130.)  Petitioner requests $19,744.50[4] for work completed by her expert neurologist, Yuval Shafrir, M.D., in preparing for and testifying at the entitlement hearing.  (ECF No. 128, p. 2.)  In response, respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs."  (ECF No. 129, p. 1.)  Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  (*Id.* at 2.)  Respondent requests that the court exercise discretion and determine a reasonable award for attorneys' fees and costs.  (*Id.* at 5.)

I.  **Attorneys' Fees**

The Vaccine Act permits an award of reasonable attorneys' fees and costs, § 300aa-15(e), and the Federal Circuit has approved the lodestar approach to determine what constitutes a reasonable award.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).  It is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").

---

[3] Petitioner's counsel initially filed a motion for an award of interim attorneys' fees and costs on April 27, 2023.  (ECF No. 110.)  However, on June 27, 2024, the undersigned denied that motion noting that a substantial prior award of interim attorneys' fees and costs was made to petitioner's departing counsel just five months prior to the motion being filed by petitioner's current counsel.  (ECF No. 127.)  Additionally, the undersigned emphasized that, since the time the motion was filed, judgment had entered, therefore eliminating the risk of prolonged proceedings moving forward.  (*Id.*)  As a result, the undersigned advised petitioner's counsel to file a motion for final attorneys' fees and costs, incorporating the amount(s) requested in her motion for interim fees and costs.  (*Id.*)

[4] In her final motion for attorneys' fees and costs, petitioner requests $19,744.45 for costs associated with the work completed by Dr. Shafrir.  (ECF No. 128, p. 2.)  Dr. Shafrir's itemized billing invoice also states that costs associated with Dr. Shafrir's work on this case total $19,744.45.  (*Id.* at 24-25.)  However, review of that billing invoice indicates that Dr. Shafrir's costs actually total $19,744.50.  (*Id.*)

Special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests[,] . . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). However, "[t]he failure of respondent to identify with particularity any objection to a request for attorneys' fees and costs may be taken into consideration by the special master in the decision." Vaccine Rule 13(a)(3).

### A. Hourly Rates

Review of the billing records shows that Ms. Widman billed $400 per hour for work performed in 2022; $420 per hour for work completed in 2023; and $480 per hour for work completed in 2024. (ECF No. 128, pp. 5-13.) Ms. Griffin billed either $175 or $275 per hour, depending on whether her work was designated as paralegal or attorney work, for work performed in 2022 through 2024.[5] (*Id.*)

Ms. Widman's rates for work completed in 2022 and 2023 are reasonable and consistent with rates awarded to her in prior decisions. *E.g.*, *Clark v. Sec'y of Health & Human Servs.*, No. 17-1553V, 2023 WL 2319374, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 2, 2023) (finding Ms. Widman's requested rate of $400 per hour for work in 2022 to be reasonable and consistent with what she has been previously awarded in the program); *Elder v. Sec'y of Health & Human Servs.*, No. 21-0028V, 2023 WL 4196770, at *1 (Fed. Cl. Spec. Mstr. May 26, 2023) (finding Ms. Widman's requested hourly rate of $420 per hour for 2023 work, representing a $20 rate increase, to be reasonable); *McDonald v. Sec'y of Health & Human Servs.*, No. 15-612V, 2023 WL 6620307, at * 3-4 (Fed. Cl. Spec. Mstr. Sept. 12, 2023) (finding that Ms. Widman's requested rates of $400 per hour for 2022 and $420 per hour for 2023 to be reasonable); *Hughes v. Sec'y of Health & Human Servs.*, No. 20-1548V, 2024 WL 1253782, at *3 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (awarding Ms. Widman $400 per hour for work completed in 2022 and $420 per hour for work completed in 2023). Additionally, the rates requested for Ms. Griffin's work are reasonable and consistent with what has been awarded in prior decisions. *Williams v. Sec'y of Health & Human Servs.*, No. 18-1860V, 2025 WL 755057, at *4 (Fed. Cl. Spec. Mstr. Feb. 11, 2025).

---

[5] While attorneys may be compensated for non-attorney level work, the rate must be comparable with the designated rate for a paralegal. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (citing *Brown v. Sec'y of Health & Human Servs.*, No. 09-426V, 2012 WL 952268, at *7 (Fed. Cl. Spec. Mstr. Feb. 29, 2012)).

3

However, the undersigned does not find that Ms. Widman's requested rate of $480 for work completed in 2024 is reasonable. In several prior cases, other special masters have denied Ms. Widman's requested rate of $480 per hour for work completed in 2023, and instead awarded her previously set rate of $420 per hour. *E.g.*, *Hughes*, 2024 WL 1253782, at *3; *Clark v. Sec'y of Health & Human Servs.*, No. 17-1553V, 2024 WL 1617841, at *2 (Fed. Cl. Spec. Mstr. Feb. 15, 2024); *Foukarakis v. Sec'y of Health & Human Servs.*, No. 20-1547V, 2024 WL 1156130, at *2 (Fed. Cl. Spec. Mstr. Feb. 22, 2024); *Cliver v. Sec'y of Health & Human Servs.*, No. 21-2045V, 2024 WL 3549596, at *2 (Fed. Cl. Spec. Mstr. June 24, 2024); *Williams*, 2025 WL 755057, at *4. A significant factor in these determinations has been Ms. Widman's failure to explain or substantiate her proposed rate increase as required by Vaccine Rule 13. *Foukarakis*, 2024 WL 1156130, at *2; *Clark*, 2024 WL 1617841, at *2; *Williams*, 2025 WL 755057, at *2, *4. Ms. Widman has likewise provided no explanation or evidence in this case to support a $60 increase in her hourly rate for work completed in 2024. (*See* ECF No. 128.) Accordingly, the undersigned adopts an hourly rate of $420 for work completed by Ms. Widman in 2024. This results in a reduction in attorneys' fees of $513, from $77,402.25 to $76,889.25.

### B. Reduction in Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include hours that are "excessive, redundant, or otherwise unnecessary" in their fee applications. *Saxton*, 3 F.3d at 1521. In reducing an award of fees, the essential goal is to achieve "rough justice." *Florence v. Sec'y of Health & Human Servs.*, No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016). Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allotting an attorney's time." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

After review of the submitted billing records, a reduction in Ms. Widman's fees is necessary for several specific reasons. First, Ms. Widman billed for administrative tasks, such as document filing, which have been found to be non-compensable in this program.[6] *See, e.g.*, *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *26 (Fed. Cl. Spec. Mstr. Sept. 1, 2015); *Paul v. Sec'y of Health & Human Servs.*, No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023); *see also Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989). Second, some of Ms. Widman's billing entries are vague, which frustrates the Court's ability to assess the reasonableness of the request.[7] *See, e.g.*, *Boman v. Sec'y of Health & Human*

---

[6] For example, a non-exhaustive list of these entries includes: "Filing of notarized Shafrir affidavit" on July 18, 2023; "Filing of brief in support of fee rates" on February 1, 2024; and "filing of Election to file Civil Action" and filing of final motion for attorneys' fees and costs on June 25, 2024. (ECF No. 128, pp. 5-13.)

[7] For example, Ms. Widman billed for "file review" on numerous occasions without providing any further detail or description regarding the task. For some billing entries for "file review," Ms. Widman provided at least some minimal context. For example, on November 30, 2022, Ms. Widman billed for "File review in preparation for Zoom call with client." (ECF No. 128, p. 7.) However, these entries are still not especially informative with respect to the actual need for file review.

4

*Servs.*, No. 15-0256V, 2017 WL 7362539, at *4-5 (Fed. Cl. Spec. Mstr. Sept. 20, 2017) (special master reducing fees by 20% for, *inter alia*, vague billing). Third, some of Ms. Widman's billing entries appear to be duplicative.[8] And, finally, some of the hours Ms. Widman billed for specific tasks were simply excessive.[9]

Upon review, a reduction to Ms. Griffin's billing is also necessary for several specific reasons. First, Ms. Griffin likewise billed for non-compensable administrative tasks.[10] *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Second, she engaged in unacceptable block billing that hinders review of her billing.[11] *See, e.g.*, *Valdes v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 415, 424. (2009) (explaining that "[s]everal tasks lumped together within one time entry frustrates the court's ability to assess the reasonableness of the request" (quoting *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *4-5 (Fed. Cl. Spec. Mstr. Dec. 17, 2008))) Third, she billed for her attendance at meetings where Ms. Widman was otherwise present and billing for the same meeting.[12] *See, e.g.*, *Raymo v. Sec'y of Health &*

---

[8] For example, on December 2, 2022, Ms. Widman billed for "Review of ECF - Prehearing Order" and "Review of Prehearing Order." (ECF No. 128, p. 7.) Ms. Widman submitted the following three entries all billed on January 19, 2023: "File review in preparation of call with Ryan Pyles," "File review – prep for call with DOJ re: JSR," and "Preparation for call with Department of Justice regarding joint status, file review." (*Id.* at 8.) Ryan Pyles was the lead DOJ attorney assigned to this case at that time. Therefore, all three of these entries submitted on the same date appear duplicative. Other entries are also suspicious for duplicative billing due to their vagueness, though they are not explicitly duplicative. For example, on March 4, 2023, Ms. Widman billed 4 hours for a Zoom call with her expert and a further 3 hours for a Zoom call with petitioner, both for purposes of trial prep. However, on that same day, she also separately billed 7 hours for "preparation for trial." (*Id.* at 11.) While it is possible that Ms. Widman worked for greater than 14 hours on this single case on that date, it is also noteworthy that the vague entry of "preparation for trial" happens to be the exact same amount of time as these two other more specific entries that would fall under that broader category.

[9] For example, Ms. Widman billed 2.5 hours for "Drafting of final Motion for fees and costs, filing of same, file review." (ECF No. 128, p. 13.) However, that motion was a single sentence. (*Id.* at 1.) She also frequently billed 0.1 hours for minor tasks, a practice for which she has previously been criticized. *Williams*, 2025 WL 755057, at *5.

[10] A non-exhaustive list of these entries includes: "prepare trial binders" on February 28, 2023; "Continued organization and preparation of trial binders" on March 1, 2023; and "download and organize exhibits for Dr. Shafrir" on March 6, 2023. (ECF No. 128, pp. 5-13.) Fee requests pertaining to these tasks have been found to be non-compensable in prior cases. *See, e.g.*, *Clendon v. Sec'y of Health & Human Servs.*, No. 18-819V, 2023 WL 319528, at *2 n.4 (Fed. Cl. Spec. Mstr. Jan. 19, 2023) (cautioning the attorney's paralegal against billing for administrative tasks such as downloading documents and updating trial binders); *Tarsell v. Sec'y of Health & Human Servs.*, No. 10-251V, 2018 WL 3989452, at *3 (Fed. Cl. Spec. Mstr. July 31, 2018) (noting that petitioner's billing records included the task of "prepare documents for trial binder," which is an administrative task and therefore not compensated by the Vaccine Program).

[11] For example, on February 28, 2023, she billed 7.5 hours for "[r]eview of medical literature and prepare trial binders." (ECF No. 128, p. 10.) While review of the literature may be reasonable for an attorney, preparation of the trial binders is not billable as discussed in note 10, *supra*.

[12] For example, on February 24, 2023, both Ms. Widman and Ms. Griffin billed 1.5 hours for a Zoom meeting with Dr. Shafrir. (ECF No. 128, p. 10.) On March 4, 2023, they similarly each billed 3 hours for

*Human Servs.*, 129 Fed. Cl. 691, 703 (2016) (explaining that, while it is reasonable for an experienced practitioner to also utilize an associate, specific billing entries may still be unreasonable where multiple attorneys bill for the same task or where two attorneys bill for the same intraoffice communication).

In addition to these specific issues, it is also worth noting that, when considering the context of Ms. Widman's involvement in this case, the overall amount sought for attorneys' fees appears excessive. Prior counsel was awarded interim attorneys' fees of $88,011.00 for all work performed in this case through April of 2022 (at hourly rates roughly comparable to those of current counsel). (ECF No. 84.) That amount encompassed all of the work performed in this case over the course of four years, including initially investigating the case, filing complete medical records, and securing Dr. Shafrir's opinion through multiple rounds of expert reports. By the time Ms. Widman entered the case in June of 2022, the entitlement hearing had already been set to be held in March of 2023. Following the hearing, the decision dismissing this case was issued in May of 2024. Thus, despite the fact that Ms. Widman's billing spans three calendar years, her role in this case was effectively limited to prosecuting the case at the entitlement hearing. Yet, her request of $77,402.25 for attorneys' fees for this one phase of litigation nearly equals that of the prior counsel. An entitlement hearing is a significant undertaking, and the hand-off of this case from one attorney to another necessarily created some unavoidable inefficiency. However, the billing records reflect that Ms. Widman and Ms. Griffin billed substantial hours in mid-2022 for reviewing the complete record of this case to initially get up to speed on the litigation, only to then turn around in early 2023 and spend substantial hours re-reviewing the complete record for purposes of hearing preparation. Given that the hearing had already been set by the time Ms. Widman entered the case, and given that no other litigation was ordered or expected in the interim, this duplication of case review was "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521.

Considering all of the above, including the overall context and the specific billing issues delineated above, I find that a 20% reduction to the requested attorneys' fees is reasonable and appropriate. This results in an attorneys' fees award of $61,511.40.[13]

## II. Attorney Costs

### A. Expert Fees

Expert work in this program is also assessed using the lodestar method. *Avera*, 515 F.3d at 1347 (applying the lodestar approach to the Vaccine Act); *Chevalier v. Sec'y of Health & Human Servs.*, No. 15-001V, 2017 WL 490426, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017) (citing *Avera* and applying the lodestar calculation to both attorneys' fees and expert costs). Generally, expert hourly rates are based on a

---

the same Zoom conference with petitioner. (*Id.* at 10-11.) On February 27, 2023, Ms. Griffin billed .25 hours for meeting with Ms. Widman and then another .25 hours to "sit in on status conference." (*Id.*)

[13] Given the reduction taken with respect to Ms. Widman's 2024 hourly rate, this reduction is calculated from the reduced amount of $76,889.25.

number of factors, many of which touch broadly on qualifications and on the market for the relevant expert services, but which also include "the nature, quality, and complexity of the information provided" by the expert, as well as "any other factor likely to be of assistance to the court in balancing the interests" at stake. *Aycock v. Sec'y of Health & Human Servs.*, No. 19-235, 2023 WL 8869423, at *7 (Fed. Cl. Spec. Mstr. Nov. 8, 2023) (citing *McClain v. Owens-Corning Fiberglass Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)); *see also Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997).

In my earlier decision awarding interim attorneys' fees and costs to petitioner's prior counsel in this case, I denied petitioner's request for reimbursement of Dr. Shafrir's work at a rate of $450 per hour. *Kinney*, 2022 WL 17968792, at *3. At that time, Dr. Shafrir had consistently been reimbursed at a rate of $350 per hour for his work preparing expert reports in this program. *Id.* Petitioner offered no argument to support the increased rate nor was I aware of any decisions by other special masters that awarded Dr. Shafrir a higher rate or discussed increasing his rate. *Id.* Accordingly, I reduced petitioner's reimbursement for Dr. Shafrir's work to his customary rate of $350 per hour. *Id.* However, I noted that "it is entirely possible that a rate increase might be justified in a later filing for future work." *Id.*

Since issuing that decision, other special masters have awarded Dr. Shafrir an increased rate of $450 per hour for his work reviewing medical literature and preparing expert reports. *E.g.*, *Paul*, 2023 WL 1956423, at *4; *Carroll ex rel. J.W. v. Sec'y of Health & Human Servs.*, No. 19-1125V, 2023 WL 2771034, at *5 (Fed. Cl. Spec. Mstr. Apr. 4, 2023); *Schwarz v. Sec'y of Health & Human Servs.*, No.18-619V, 2023 WL 7220173, at *6 (Fed. Cl. Spec. Mstr. Sept. 25, 2023); *Larsen v. Sec'y of Health & Human Servs.*, No. 19-56V, 2024 WL 5377991, at *3 (Fed. Cl. Spec. Mstr. Nov. 15, 2024). In *Paul*, the special master noted that,

> [b]ased on Dr. Shafrir's familiarity and longevity with the Program as well as his active clinical and academic practice, Dr. Shafrir should be paid as requested at a rate of $450 per hour, bringing his hourly rate . . . more in line with other pediatric neurologists who serve as experts for petitioners in this Program.

2023 WL 1956423, at *4. Accordingly, I find that petitioner's requested rate of $450 per hour for Dr. Shafrir's work preparing for the 2023 entitlement hearing to be consistent with these more recent awards and therefore reasonable.

Dr. Shafrir has been compensated at a higher rate for his testimony and attendance at entitlement hearings. *E.g.*, *Walters v. Sec'y of Health & Human Servs.*, No. 15-1380V, 2022 WL 1077311, at *7 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (awarding Dr. Shafrir rates of $500 per hour for his attendance at the entitlement hearing and $350 per hour for all other work he completed in the case); *Schwarz*, 2023 WL 7220173, at *6 (awarding Dr. Shafrir $550 per hour for his attendance at the entitlement hearing, $450 per hour for all other work completed in 2021 and onward, and $350 per hour for all other work completed in 2020 and earlier). In prior decisions, other special masters

have found Dr. Shafrir's rate of $600 per hour for his testimony and attendance at entitlement hearings to be reasonable.  *E.g.*, *Larsen*, 2024 WL 5377991, at *3.  Therefore, I find that petitioner's requested rate of $600 per hour for Dr. Shafrir's attendance and testimony at the entitlement hearing to be reasonable.

However, Ms. Widman unreasonably tasked Dr. Shafrir with preparation of part of her prehearing submission, which inflated the number of hours billed.  Specifically, in connection with instructing the parties to submit prehearing briefs, the prehearing order issued in this case instructed that

> Any party wishing to rely upon a medical article during direct examination of any of their witnesses shall file a short explanation of the proposition that the article is intended to support and shall ensure that the record of the case includes a copy of the article with relevant portion(s) highlighted, boxed, circled or similarly marked.  If such marking was done at the time of filing, it need not be repeated.  This may be filed as a separate document or incorporated into the prehearing brief with any necessary article excerpts included as attachments to the brief.

(ECF No. 85, pp. 3-4.)

During the period Ms. Widman was drafting petitioner's prehearing brief, she e-mailed Dr. Shafrir on February 6, 2023, to explain the date by which "his" medical literature explanations were due. (ECF No. 128, p. 12.)  Dr. Shafrir then billed 1.5 hours for a Zoom meeting with counsel on February 24, 2023, followed by 9.75 hours relating to writing a literature summary for the case on February 27 and 28, 2023.  (*Id.* at 24-25.)  However, in addition to other hours billed for trial preparation, Ms. Widman billed 6 hours for "journal article preparation" and "prep for trial" on February 27, 2023.  (*Id.* at 10.)  Ms. Griffin then billed a further 11 hours on February 28, 2023, for "[r]eview of medical literature and prepare trial binders" and "[c]ontinued organization and preparation of trial binder."  (*Id.*)  Petitioner filed the medical literature summary on February 28, 2023.  (ECF No. 104.)

While it is not inherently unreasonable for an attorney to consult with their expert in preparing this type of a summary, it must be stressed that the prehearing order directed that the summary be completed as a part of the briefing process, which, along with strategic decisions as to what will be presented at hearing and for what purpose, is the purview of the attorney, rather than the expert.  Moreover, petitioner's counsel engaged Dr. Shafrir to wholly draft a literature summary while herself simultaneously billing a significant number of hours to redundantly review and prepare for the presentation of these same articles during the hearing.  This was an unreasonable duplication of effort.  Because Dr. Shafrir did not otherwise have a need to familiarize himself with this material (given that he had relied upon it in formulating his opinion in the first place), and because petitioner's counsel otherwise did need to grapple with the literature as part of trial preparation and strategy, I find that it is Dr. Shafrir's hours that are unreasonably duplicative.  Accordingly, the allowable reimbursement to petitioner's

counsel for Dr. Shafrir's invoice is reduced by $5,062.50 (reflecting 11.25 hours billed at $450 per hour), from $19,744.50 to $14,682.00.

### B. Other Costs

I have reviewed the remainder of the costs requested and find that they are reasonable and sufficiently documented. Therefore, I award reimbursement of those costs in full, which total $870.60 in costs incurred by counsel and $88.34 in costs incurred by petitioner.

### III. Conclusion

**Accordingly, petitioner is awarded attorneys' fees and costs in the total of $77,152.34, (representing $77.064.00 for counsel's fees and costs and $88.34 for petitioner's personal costs) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

The clerk of the court shall enter judgment in accordance herewith.[14]

**IT IS SO ORDERED.**

<u>s/Daniel Horner</u><br>
Daniel Horner<br>
Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.